UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:14-CV-00259-TBR

JASON CLARK, DVM                                                  Plaintiff

v.

BLUEPEARL KENTUCKY, LLC                              Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff Jason Clark's Motion for Declaratory Judgment that Defendant BluePearl Kentucky, LLC "has no right to enforce a non-compete agreement between Plaintiff and his former employer." (Docket No. 10.) Defendant BluePearl Kentucky, LLC has responded. (Docket No. 12.) Plaintiff Clark has replied. (Docket No. 13.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Plaintiff Clark's Motion for Declaratory Judgment. (Docket No. 10.)

BACKGROUND

In July 2007, Plaintiff Clark, a veterinarian specializing in diseases of the eye, entered into an employment and noncompetition agreement (collectively "Employment Agreement" or "Agreement") with Eye Care for Animals, Inc. (ECFA). (Docket No. 1-2, at 3.) ECFA furnishes and leases employees to veterinary practices around the country. Beginning in 2010, ECFA leased Clark to Kentucky Eye Care for Animals, LLC (KECFA).[1] (Docket No. 1-2, at 4.)

---

[1] KECFA is not a subsidiary or otherwise legally related to ECFA. (Docket No. 1-2, at 4.)

In August 2013, KECFA went out of business and terminated its relationship with Clark claiming that it was not profitable. (Docket No. 1-2, at 5.) In September 2013, KECFA sold its assets, including its rights under the Employment Agreement between ECFA and Clark, to Defendant BluePearl, one of its former competitors. (Docket No. 1-2, at 5.)

Through his communications with ECFA and BluePearl, Clark has learned that BluePearl will seek to enforce the noncompetition portion of the Agreement if he takes a job in the "Restricted Territory" as defined in the Agreement. (Docket No. 10-1, at 3-4.) Clark brings this Motion for Declaratory Judgment requesting this Court declare BluePearl has no right to enforce the non-compete agreement. (Docket No. 10.)

I. Employment and Noncompetition Agreement

The Employment Agreement recites that ECFA furnishes and leases employees to entities, referred to as "Practices", engaged in the practice of veterinary medicine and that specialize in veterinary ophthalmology. (Docket No. 12-1, at 2.) It also states that ECFA employs Clark "for the purpose of providing veterinary medical and veterinary ophthalmology services to the Practices." (Docket No. 12-1, at 4.) Finally, it designates the "Practices" as intended beneficiaries of the Agreement and specifically states they, in addition to ECFA, "may enforce the Employee Covenants set forth in Attachment B"—which includes the covenant not to compete. (Docket No. 12-1, at 10.)

The covenant not to compete restricts Clark from practicing veterinary ophthalmology within ten miles of any veterinary ophthalmology practice where Clark worked for one year prior to his termination of his employment with ECFA. (Docket No. 12-1, at 16.) This restriction

lasts for one year following termination of Clark's employment with ECFA. (*Id*.) In relevant part, it states:

> A. <u>Covenant Not to Compete</u>. Upon the termination of Employee's employment with ECFA, for any reason, Employee hereby expressly covenants and agrees that, during the Restricted Period, as defined below, and within the Restricted Territory, as defined below, Employee will not practice veterinary ophthalmology, directly or indirectly, alone or with any partner, or as an owner, manager, principal, employee or independent contractor of any professional association or corporation. Upon termination of employment, Employee will not be restricted from practicing general veterinary medicine, but will be limited from practicing veterinary ophthalmology within the Restricted Territory and during the Restricted Period.

(Docket No. 12-1, at 16.) "Restricted Territory" includes an area within a radius of ten miles of any veterinary ophthalmology practice where Employee practiced during twelve months prior to the date Employee's employment with ECFA terminated. (*Id.*) "Restricted Period" means during the term of employment and one year following the termination of employment. (*Id.*)

DISCUSSION

Clark argues BluePearl cannot enforce the non-compete agreement because: (1) BluePearl is not a third-party beneficiary of the agreement; (2) the circumstances under which the Agreement could be assigned have not been met and, in any event, the assignment is prohibited; and (3) he can terminate the Agreement under Article IV, B(2)(b). The Court will address each of these arguments.

I. <u>KECFA Was a Third Party Beneficiary of the Agreement</u>

The Court finds that KECFA is a third party beneficiary of the Agreement. Whether a party is third party beneficiary is a question of law for the Court to determine. *See, e.g.*, *Sherman v. First American Title Ins. Co.*, 38 P.3d 1229, 1231-32 (Ariz. Ct. App. 2002); *Araiza v.*

*U.S. West Business Resources*, 904 P.2d 1272, 1278 (Ariz. Ct. App. 1995).[2] Under Arizona law, for a person to recover as a third party beneficiary the contacting parties must intend to directly benefit that person and must indicate that intention in the contract itself. *Sherman*, 38 P.3d at 1232. As stated in *Sherman*,

> the third person must be the real promisee. The promise must be made to him in fact . . . and it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the primary party in interest and as privy to the promise.

*Id.* (citations omitted). "A third party intended beneficiary is found where recognition of the right to performance in the beneficiary is appropriate to effectuate the intention of the parties, and the circumstances indicate that the promise intended to give the beneficiary the benefit of the promised performance." *Supplies for Industry, Inc. v. Christensen*, 659 P.2d 660, 662 (Ariz. Ct. App. 1983) (citing RESTATEMENT (2D) OF CONTRACTS, § 302 (1982) (upholding injunction against a former employee of a business pursuant to a covenant not to compete that had been assigned to another business))).

The Agreement designates the "Practices" as intended beneficiaries and specifically states they, in addition to ECFA, "may enforce the Employee Covenants set forth in Attachment B"—which includes the covenant not to compete. (Docket No. 12-1, at 10.) Notably, the Agreement states "it is the parties' express intention that this Agreement directly benefit . . . the Practices by . . . (4) protecting the Practices' business, clients and operations." (Docket No. 12-1, at 10.) Therefore, this Court finds that the "Practices" would be third party beneficiaries of the covenant not to compete because they were the "primary" parties in interest and the parties intended to "recognize" them. Clark's citation to *Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072 (D.

---

[2] The Agreement is governed by the laws of the State of Arizona, (Docket No. 12-1, at 9), and the parties agree Arizona law applies, (Docket Nos. 10-1, at 2 n.2; 12, at 7 n.3).

Ariz. 2013), is clearly distinguishable because of the express provisions in the Agreement indicating an intention to recognize the Practices as a primary party in interest.

> Regarding what entities are considered "Practices", the Agreement states:
>
>> These entities, in conjunction with various affiliated offices located throughout the United States; include Eye Care for Animals 1, Inc.; Eye Care for Animals 2, LLC . . . and other future entities to which ECFA may elect to furnish and lease employees and/or provide employee services ("Practices.")

(Docket No. 12-1, at 2.) KECFA is wholly owned by Eye Care for Animals 2, LLC (ECA). (Docket No. 12-2, at 2.) Furthermore, Clark was furnished and leased to KECFA by ECFA. Accordingly, the Court finds that KECFA is a "Practice" and, as a result, a third party beneficiary of the Agreement.

While BluePearl is not a "Practice" and there was not an indication of an intention to recognize it in the Agreement, KECFA sold its assets, including its rights under the Agreement, to BluePearl in September of 2013. ECA was also a party to this sale because it wholly owned KECFA. (Docket No. 12-2, at 2.) Despite these facts, Clark alleges that BluePearl did not purchase the assets of KECFA until "nearly three weeks after Clark's termination", and, therefore, there was no "legitimate business interest to protect," precluding enforcement of the covenant not to compete. (Docket No. 13, at 1-2.)

A "legitimate" purpose of post-employment restraints is "to prevent competitive use, for a time, of information or relationships which pertain peculiarly to the employer and which the employee acquired in the course of the employment." *Valley Medical Specialists v. Farber*, 194 Ariz. 363, 367 (1999) (en banc). The Court finds there was a "legitimate business interest" to protect because BluePearl purchased KECFA's client list and goodwill, among other assets. (Docket No. 12-2.) Even putting aside BluePearl's asset purchase, KECFA continued to have a

"legitimate" business interest in its goodwill and customer base after closing. Additionally, Arizona law allows "successor companies to enforce restrictive covenants, even when the contract is silent regarding assignability and the employee has not consented." *Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1085 (D. Ariz. 2009). "Arizona courts treat restrictive covenants in employment agreements as assignable assets enforceable by successor companies, not as highly personalized arrangements between employee and employer." *Id*.

KECFA was a "Practice" and a proper third party beneficiary of the covenant not to compete. Therefore, BluePearl may enforce the covenant not to compete under the Agreement if KECFA's assignment to BluePearl of its rights under the Agreement was valid

II. The Assignment From KECFA to BluePearl Was Valid

    A. The Assignment Was Not Prohibited By The Terms of The Agreement

Clark argues the purported assignment by KECFA was ineffectual because the contingency for assignment in the Agreement was not met—namely that ECFA did not sell "all or substantially all of the assets and business." Regarding assignment, the Agreement states:

> B. Assignment. Employee shall not assign, sell, transfer or delegate any of Employee's rights or duties under this Agreement without ECFA's prior written consent. This Agreement is personal to Employee, and ECFA is specifically relying on the individual experience and skills of Employee and no other person to perform the duties of Employee under this Agreement. This Agreement shall be binding upon and shall inure to the benefit of ECFA, its successors and assigns. The term "successors" and "assigns" as used herein shall mean a corporation, partnership, or other entity acquiring all or substantially all of the assets and business of ECFA.

(Docket No. 12-1, at 8.) Despite Clark's insistence otherwise, the Court does not read this provision as requiring a sale of substantially all of the assets of ECFA occur in order for *KECFA*, one of the Practices, to assign its rights under the Agreement. On the contrary, the Court reads this provision as establishing only: (1) that Clark cannot assign his rights or duties under the

Agreement, and (2) under what circumstances successor entities to *ECFA*—not KECFA—are bound by and may benefit from the Agreement. This provision is not implicated by BluePearl's purchase of KECFA's rights under the Employment Agreement. Arizona law allows "successor companies to enforce restrictive covenants, even when the contract is silent regarding assignability and the employee has not consented." *Scariano*, 606 F. Supp. 2d at 1085. Accordingly, assignment by KECFA to BluePearl is not prohibited by the Agreement.

B. Substitution of BluePearl Would Not Materially Change the Duties of Clark

Clark also alleges the substitution of BluePearl for KECFA would materially change the duties of Clark and/or materially increase the burden or risk imposed on Clark by his contract. (Docket No. 10-1, at 8.) However, Clark never explains how it would materially change his duties or increase his burden. The Restricted Territory, which is based on where he practiced twelve months prior to the termination of his Employment, is the same regardless of whether BluePearl or KECFA is seeking to enforce the covenant. Through the Asset Purchase Agreement, BluePearl stepped into the "shoes" of KECFA by purchasing its referring veterinarian list, medical records, goodwill, telephone number, and its rights under the Agreement, among other assets. (Docket No. 12, at 10.) BluePearl is enforcing no greater a restrictive covenant that what KECFA was capable of enforcing. Therefore, Clark's obligations have not changed materially.

III. Clark Could Not Terminate the Agreement Under Article IV, B(2)(b)

Clark also briefly argues that Article IV, B(2)(b), permits him to terminate the Agreement. (*See* Docket Nos. 10-1, at 8 n.4; 13, at 1.) That provision states:

> 2. Termination for Good Reason. Employee may terminate this Agreement with Good Reason. For purposes of this Agreement, "Good Reason" shall mean the occurrence of any one or more of the following events without

> Employee's prior written consent, unless ECFA fully cures the circumstances constituting Good Reason (provided such circumstances are capable of cure) as provided herein:
>
> . . . .
>
> b. Any of the Practices lose the license to operate a business at the location where Employee is working and no alternative location is available to transfer

(Docket No. 12-1, at 7.) Clark has not alleged that KECFA lost its license to operate. Rather, it appears KECFA made the decision to stop operating on its own because of concerns of profitability. Additionally, although the absence of losing a license is determinative, BluePearl offered Clark employment, albeit in a location he did not wish to transfer to. (*See* Docket No. 13, at 2 n.2.) Accordingly, this provision does not provide Clark a basis to terminate the Agreement.

## CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED that Plaintiff Jason Clark's Motion for Declaratory Judgment is **DENIED**. (Docket No. 10.)

The telephonic conference on June 19, 2014 at 10:00 a.m. EDT remains as scheduled.

IT IS SO ORDERED.

Date:

cc: Counsel